466 P.2d 1

**STATE of Arizona, Appellee,**

**v.**

**Roy Monro HANSHE, Appellant.**

**No. 2027.**

Supreme Court of Arizona,

In Division.

March 5, 1970.

Rehearing Denied and Opinion Supplemented April 16, 1970.
See 468 P.2d 382.

Gary K. Nelson, Atty. Gen., and Moise Berger, Maricopa County Atty., Phoenix, for appellee.

Sternberg & Rubin, Ltd., by Ronald I. Rubin, Phoenix (court-appointed), for appellant.

UDALL, Justice.

Defendant, Roy Hanshe, appeals from convictions of possession and sale of marijuana.

On May 14, 1968, Glenn Kenner, an undercover agent for the Phoenix Police Department, met with Paul Wielins who agreed to sell him a kilo of marijuana, the delivery to take place at Wielins' apartment on May 17, 1968. Later the same evening, Wielins went to defendant's apartment, told him that he had a buyer, and asked him if he knew where he could obtain a kilo of marijuana. Defendant said he thought he knew where to get some and that he would know by Friday, May 17th. It was arranged that the marijuana would be left at defendant's apartment on Friday for Wielins to pick up. The price of $100 was to be paid to defendant after Wielins had collected the money from Kenner.

On the evening of Friday, May 17th, Glenn Kenner arrived at Wielins' apartment to make the purchase as agreed. Wielins was alone in his apartment and asked Kenner to go to a nearby store for some cat food, while he went to defendant's apartment nearby, to get the marijuana. Wielins soon returned to his apartment with defendant, who was carrying the marijuana. When Kenner returned, Wielins told defendant to go in the bathroom. As Kenner entered the apartment, he gave Wielins the cat food and started to walk into the bathroom. Wielins stopped him by saying, "Don't go in there. He's in there. And he doesn't want his face to be seen." Wielins then went to the bathroom, took the kilo of marijuana from defendant and gave it to Kenner. Two other officers, who were staked outside, were then signaled by Kenner to enter, and both Wielins and defendant were arrested.

Defendant first contends that the admission over objection of Glenn Kenner's testimony that Wielens said, "Don't go in there. He's in there. And he doesn't want his face to be seen.", was error because that testimony was hearsay. Although the statement was quite clearly inadmissible hearsay, it can hardly be argued that the admission of this evidence could have prejudiced the defendant. Both Wielens and defendant testified that defendant had personally car-

ried the marijuana to Wielins' apartment and that upon the arrival of Kenner, he had retired to the bathroom. The clear impli-.cation is that he wanted to conceal himself from the view of the purchaser. Yet we don't have to rely on an implication, because Wielins himself testified without objection from defendant that he stopped Glenn Kenner from entering the bathroom by saying, "Don't go into the bathroom. A friend of mine is in there. I don't want him associated with this." Also the defendant, when asked "Why were you afraid to be there?" replied, "I didn't want to be involved with it, selling it." There is substantial evidence which establishes the fact that defendant went into the bathroom because he didn't want to be seen. The admission of the hearsay in question was therefore harmless error.

█ Defendant next complains that the prosecutor, in his opening statement, failed "to set forth the state's case in a legally sufficient manner", in that he demonstrated no intention of proving possession and sale of marijuana. This contention is without merit. The prosecutor informed the jury that the information charged the defendant with the possession of marijuana and also with participating either directly or indirectly in the sale of marijuana to Officer Kenner. He then told the jury more specifically that defendant was the supplier of the marijuana which was sold to Officer Kenner. He then avowed that he would prove beyond a reasonable doubt each and every material allegation in the information. This language clearly indicates an intention on the part of the State to show that defendant aided and abetted the sale of narcotics by Wielins to Officer Kenner, in that he supplied the narcotics and carried them to the home of Wielins, where the sale was consummated.

█ Defendant also faults the State's opening statement in that the case was referred to as a narcotics case. He claims prejudice sufficient to warrant a mistrial and in support points out the legislative distinction made between marijuana and narcotics other than marijuana. It is true that A.R.S. § 36–1002.05, a separate section dealing specifically with marijuana, provides less severe punishment than those sections dealing with other narcotics. Defendant, however, overlooks A.R.S. § 36–1001 which specifically defines marijuana as a "Narcotic drug". The characterization of the case as a narcotics case was accurate and not prejudicial.

█ Defendant's allegation that there was insufficient evidence to corroborate the testimony of an accomplice is also without merit. Paul Wielins is undeniably an accomplice. But all that is required is that his testimony be "corroborated by other evidence which, in itself and without aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense." A.R.S. § 13–136. Defendant's own testimony establishes the facts that he kept the kilo of marijuana in his possession in his apartment for Wielins to come and pick up; and also that he was the person who carried the marijuana from his apartment to Wielin's apartment where the sale took place. This alone is sufficient corroborative evidence to establish defendant's participation and cooperation in the sale; not to mention the testimony of the three officers regarding his presence at the time of the sale and his apparent cooperation in aiding its completion.

█ The defendant claims the trial court erred in allowing Officer Kenner to remain in the courtroom at the prosecutor's table after defendant's motion to exclude witnesses from the courtroom had been granted. We do not agree. Officer Kenner, the investigating officer and first witness, was properly allowed to remain in the courtroom to assist the prosecution. In State v. Armenta, 98 Ariz. 152, 402 P.2d 571 (1965), we quoted with approval the following language:

"It is generally advisable in a criminal case that the county attorney have the

prosecuting witness at hand so that he may, from time to time, question him in regard to the facts of the case in order that it may be properly presented to the jury, and such is the almost universal practice in this State."

■ Defendant challenges the trial court's refusal to give the following requested instruction:

"It is the law that the testimony of an accomplice ought to be viewed with distrust. This does not mean that you may arbitrarily disregard such testimony, but you should give it the weight to which you would find it would be entitled after examining it with care and caution and in the light of all the evidence in the case. In giving this instruction I do not intend to imply any opinion of my own to the credibility of the witness. CALJIC Instruction No. 829.".

Instead the court instructed the jury as follows:

"A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which in itself and without aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

The instruction given correctly states the law in Arizona, which is that the testimony of an accomplice must be corroborated. A.R.S. § 13-136. It is not the law in Arizona that the jury should be instructed to regard any testimony with distrust. The requested instruction was properly refused and the instruction given accurately stated the law.

■ Defendant alleges that both the deputy county attorney and the court's adult probation officer instructed the state's key witness, Paul Wielins, not to discuss his testimony prior to the trial with Mr. Bernstein, defense counsel. This allegation is

controverted by the record. Although Wielins first replied to defense counsel's question by saying: "I was told not to discuss the case with you", his later answers qualify that statement. He testified as follows:

"A  I was told not to talk to anybody concerning any of this.

"Q  By who?

"A  By my probation officer. He said not even to associate with any of the people involved or any people on their side.

"Q  Well, I mean—all right. He presumably wants you to make new friends, not get into the bad habits and so forth you were in.

"A  Yes. That's why."

And then in response to re-direct questioning by the prosecutor the following answers were elicited:

"Q  Paul, did I ever tell you not to discuss the case with Mr. Bernstein?

"A  Yes, you did.

"Q  When did I tell you that?

*    *    *    *    *    *

"A  When I was in jail before sentencing.

"Q  And what did I tell you?

"A  Told me not to discuss the case.

"Q  I told you not to discuss the case with anyone, right?

"A  Yes.

"Q  I didn't specifically say Mr. Bernstein or anyone else, did I? I didn't mention any particular names at that time, did I?

"A  I got the general idea not to discuss it with anyone.

"Q  Right. And yesterday I told you to —you could discuss the case with Mr. Bernstein or any attorneys in the action if you wanted to. It was entirely up to you.

"A  Yes.

"Q And your probation officer also told you not to discuss the case with anyone, using the words "anyone;" right?

"A Yes."

The prosecutor admitted he had given the witness a general admonition not to discuss the case with anyone. Any need for continuance (which was not requested), or any need for an order requiring the witness to discuss the matter with counsel was obviated when the prosecutor made clear that defense counsel was excepted from the admonition.

The proper procedure for defendant to follow in protecting his right to interview prosecution witnesses is to demand that the prosecutor rescind his instructions, and if necessary, apply to the court for an order requiring the witnesses to discuss their testimony with him. If he feels that his access to witnesses comes too late, he may move for a continuance on the ground that he has had an inadequate opportunity to interview such witnesses. Defendant did in fact have the opportunity to interview Wielins before trial and evidently felt no need to apply for the remedies mentioned. His cross-examination of Wielins was thorough, no surprise came about, and no continuance was requested after Wielins' testimony. In any case, in view of his failure to follow such procedures, he cannot be now heard to complain of error.

Defendant raises other questions including some regarding the sufficiency and weight of the evidence. The contentions are completely without basis; and in view of our earlier discussion of the evidence adduced at trial, need no further comment here.

■ Defendant does present one valid claim; that the facts of the case do not support a conviction for both possession of marijuana and its sale. The Attorney General on behalf of the State concurs. Where the marijuana is obtained solely for the purpose of one particular sale, there is only one transaction involved and one offense committed. State v. Duplain, 102

Ariz. 100, 425 P.2d 570 (1967); State v. Vallejos, 89 Ariz. 76, 358 P.2d 178 (1960). The evidence here shows that the possession of the marijuana was incidental to the sale. There was no showing that defendant kept any marijuana or any other narcotic in his possession.

The judgment of conviction and the sentence based on count II, possession of marijuana, is set aside. Judgment affirmed as to count I, sale of marijuana.

LOCKWOOD, C. J., and STRUCK-MEYER, V. C. J., concur.